UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:10-cr-5 |
| v. ) | |
| ) | Judge Mattice |
| JONATHAN ALLEN and ) | |
| TERENCE CRAWLEY ) | |

## **MEMORANDUM AND ORDER**

Before the Court is Defendants' Joint Objections to Magistrate Judge Lee's June 29, 2010 Report and Recommendation [Court Doc. 45].

Defendants separately filed Motions to Suppress [Court Docs. 21 & 27], which were both referred to Magistrate Judge Susan K. Lee. [Court Docs. 24 & 28.] Magistrate Judge Lee held an evidentiary hearing on Defendants' Motions to Suppress on May 14, 2010 and permitted the parties to file post-hearing briefs. [Court Docs. 36, 38 & 39]. Magistrate Judge Lee issued her Report and Recommendation on June 29, 2010. [Court Doc. 42]. In her R&R, Magistrate Judge Lee recommended that Defendants' Motions be denied. Defendants timely filed a joint objection to Magistrate Judge Lee's R&R [Court Doc. 45], and the Government timely responded. [Court Doc. 49].[1]

The Court has now reviewed the entire record pertinent to the instant objection, and for the reasons described below, the Court will **ACCEPT** and **ADOPT** Magistrate Judge

---

[1] Both Defendants have acquired new counsel in the meantime, and Defendants' newly appointed counsel have advised the Court that they wish to persist in the previously filed objections to Magistrate Judge Lee's Report and Recommendation. (Court Docs. 62 & 64.) Defendant Crawley's new counsel indicated that he wished to persist in both the Objections filed by Defendants' previous counsel and Defendant Crawley's letter to the Court of August 9, 2010. (Court Doc. 50.) Because Defendant Crawley was represented by counsel at the time of the letter and was not proceeding *pro se*, the Court will not entertain Defendant Crawley's letter as a separately filed objection to the R&R.

Lee's R&R and will **DENY** Defendants' Motions to Suppress.

I. **STANDARD OF REVIEW**

The Court must conduct a *de novo* review of those portions of the Report and Recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations 28 U.S.C. § 636(b)(1)(C).

II. **FACTS**

Magistrate Judge Lee held an evidentiary hearing on Defendant's Motion to Suppress on May 14, 2010, during which the Government offered the testimony of Oris Lilly ("Trooper Lilly" or "Lilly") and Russell Edwards ("Trooper Edwards" or "Edwards"). Defendants offered the testimony of Marian Jeannelle Nelson ("Nelson"). Lilly and Edwards were troopers with the Virginia State Police at the time of the incident, and Nelson is the mother of Defendant Terence Crawley. In her R&R, Magistrate Judge Lee recounted at some length the facts developed at the evidentiary hearing. (Court Doc. 42, R&R at 1-10). Defendants have not objected to the basic facts as outlined in Magistrate Judge Lee's R&R. Instead, the objections focus on the legal conclusions drawn from the facts, and Magistrate Judge Lee's findings in regards to those facts. Accordingly, the Court **ADOPTS BY REFERENCE** the facts as set out in Magistrate Judge Lee's R&R. (*Id.*) The Court will refer to the facts only as necessary to analyze the issues raised on objection.

III. **ANALYSIS**

Defendants assert two objections. First, Defendants argue that the initial stop was invalid because Trooper Lilly lacked probable cause; in the alternative, and even if the Court finds that the initial stop was valid, Defendants argue that Lilly did not have

reasonable suspicion to detain them for an extended period of time and the evidence seized should be suppressed. The Court will address each objection in turn.

### A. Initial Stop

Defendants assert that Trooper Lilly did not have probable cause to stop their vehicle because the applicable statute governing the failure to use a turn signal only requires a signal when the lack of a signal may affect the movement of another vehicle. (Court Doc. 45, Defs.' Objs. at 2.) Defendants assert that Trooper Lilly was not affected by the failure to signal and that his testimony regarding the one vehicle exiting the parking lot is not sufficient to invoke the statute. Essentially, Defendants argue that if a vehicle was exiting the parking lot to turn on the northbound lane, as Trooper Lilly testified, that vehicle was not affected because it had to wait for the roadway to clear before turning, and Defendants' failure to use a turn signal did not have any effect on that underlying physical fact. (*Id.* at 2-3.) Therefore, Defendants argue that Trooper Lilly had no valid reason to stop the vehicle and that the invalidity of the stop renders all items seized fruit of the poisonous tree. (*Id.* at 3.)

In her R&R, Magistrate Judge Lee concluded that Trooper Lilly had probable cause to stop Defendants and that the stop was valid. (R&R at 13.) Magistrate Judge Lee found that Lilly had probable cause to believe that Defendants had violated the statute concerning turn signals because he observed Defendants' vehicle make an abrupt turn into a parking lot where another vehicle was waiting to turn out of the parking lot, and the vehicle waiting to turn may have been affected by Defendants' failure to signal. (*Id.* at 11-12.) The applicable statute reads:

> Every driver who intends to back, stop, turn, or partly turn from a direct line shall first see that such movement can be made safely and, whenever the operation of any other vehicle may be affected by such movement, shall give the signals required in this article, plainly visible to the driver of such other vehicle, of his intention to make such movement.

Va. Code § 46.2-848. Defendants assert that the vehicle waiting to turn from the parking lot was not affected because it would have needed to wait until the road was clear pursuant to Va. Code § 46.2-826, which states that "[t]he driver of a vehicle entering a public highway or sidewalk from a private road, driveway, alley, or building shall stop immediately before entering such highway . . . and yield the right-of-way to vehicles approaching on such public highway."

The Court finds this argument unpersuasive. The Court interprets Va. Code § 46.2-826 to mean that a vehicle must initially come to a stop and yield to oncoming vehicles before making a turn, not that a vehicle must wait until the roadway is completely clear. Photos of the parking lot were introduced at the evidentiary hearing, and the entire length of the parking lot is open to the roadway. (Defs.' Ex. 1.) Therefore, a vehicle that has already stopped at the entrance to the parking lot, is yielding to other vehicles passing on the road, and is waiting to turn out of the parking lot, may indeed have been affected by Defendants' failure to signal their right-hand turn into the parking lot. As the Government noted in its Response, if Defendants had properly signaled, "the other vehicle would have been able to pull out of the parking lot at that instant." (Court Doc. 49, Gov't's Resp. to Defs.' Objs. at 3.) Indeed, it would be impossible to ever definitively establish that a vehicle had been affected by a failure to signal, and the statute contemplated this difficulty by requiring only the possibility of an effect on other vehicles. Therefore, the Court finds the

Government's position to be well-supported by Trooper Lilly's testimony and the evidence introduced at the hearing. Trooper Lilly had probable cause to believe that Defendants had violated the Virginia statute by failing to signal because Lilly observed a vehicle that *may* have been affected by this failure.

The Court therefore concludes that Magistrate Judge Lee properly found that Trooper Lilly had probable cause to believe that the statute had been violated and that his stop of Defendants' vehicle was valid. Accordingly, the Court **OVERRULES** Defendants' objection as to the validity of the stop.

B. **Length of Detention**

Because the Court rejects Defendants' first objection and their contention that the evidence can be suppressed based on the validity of the entire stop, the Court will now turn to the second objection regarding the length of detention. Defendants argue that the length of the detention was excessive and constitutes an unconstitutional search and seizure because Trooper Lilly did not have enough legitimate suspicions to detain Defendants for an extended period of time. (*Id.*) Defendants point specifically to several factors. Defendants claim that the open sunroof is not suspicious, even considering the weather, because the driver's side window was not operating and the sunroof was used to dispose of cigarette ashes in lieu of the window. (*Id.*) Defendants assert that the sudden exit from the interstate is innocent and easily explained by the fact that they were from another state and unfamiliar with the area. (*Id.* at 4.) Defendants argue that Trooper Lilly's testimony that the dash display was not working is not credible because Lilly also testified that Defendants were abiding by several different speed limits, and a non-

functioning dash display would not be suspicious in any event. (*Id.*) Defendants claim that Trooper Lilly's suspicion as to the screwdriver is unfounded and irrelevant because he did not see the screwdriver until after he had stopped Defendants, and there is nothing suspicious about a screwdriver. (*Id.*) Finally, Defendants allege that their stories were not inconsistent in a way that might raise Trooper Lilly's suspicion, and that their nervousness is not inherently suspicious because it can be easily explained by the fact that Lilly followed them for several miles. (*Id.* at 4-5.) Because Defendants claim that the factors Trooper Lilly cited as suspicious were not suspicious at all, Defendants assert that the continued detention was not based on reasonable suspicion of criminal activity and was in violation of their Fourth Amendment rights. (*Id.* at 5.) Defendants argue that while Trooper Lilly investigated each of the suspicious factors, his investigation lessened the suspiciousness of each factor, but he instead testified that his investigation heightened his suspicions. (*Id.* at 6.)

In her R&R, Magistrate Judge Lee determined that the stop at it issue in the instant case differed from one in which the officer detains an individual *after* the purpose of the stop had been completed. (R&R at 13.) In this case, there was prolongation during the stop–before it was complete–because Trooper Lilly was simultaneously completing the purpose of the stop and conducting further investigation. Magistrate Judge Lee described the difference between the type of stop, and the corresponding inquiry, by stating that an officer must have an independent reasonable suspicion to continue detention after the completion or abandonment of the purpose of the traffic stop; when, however, the officer continues to pursue the purpose of the stop throughout the detention, the Court must look

at the totality of the circumstances to determine if the detention was reasonable. (*Id.* at 15.) Accordingly, Magistrate Judge Lee found that the traffic stop was never abandoned and, therefore, the appropriate inquiry was whether Trooper Lilly was diligently pursuing the purpose of the stop and, if he was not, whether Lilly had independent reasonable suspicion for the prolonged detention. (*Id.*)

Magistrate Judge Lee found that the traffic stop was not complete until Defendant Crawley gave Trooper Lilly consent to search the car. (R&R at 15.) Magistrate Judge Lee found that Trooper Lilly initially proceeded with the stop by telling Defendants why he had pulled them over. (*Id.* at 17.) Magistrate Judge Lee found that Trooper Lilly had already observed several suspicious factors by this time, including Defendants' quick exit from the interstate, hesitation at the end of the exit ramp, and the malfunctioning window and the screwdriver in the vehicle that might indicate electrical problems. (*Id.*) Magistrate Judge Lee noted that Trooper Lilly continued with the purpose of the traffic stop by obtaining Defendants' identification, after which he learned that Defendant Crawley had an outstanding warrant on a weapons charge in Georgia and other charges–including a flight charge–and that Defendant Allen had a drug charge and a flight charge on his record. (*Id.*) At this juncture, Trooper Lilly called for backup and began to write the summonses. (*Id.*) Magistrate Judge Lee found that when Trooper Lilly returned to the car, he properly continued the traffic stop with "context-framing" questions by asking Defendants where they had been traveling, and their stories further aroused his suspicions. (*Id.* at 18.)

Magistrate Judge Lee found that Trooper Lilly's decision to separate the men for further questioning at this point was proper because Lilly had reasonable suspicion that

Defendants were involved in criminal activity. (R&R at 18.) In addition to the other observations that had raised his concern, Trooper Lilly now had stories with inconsistencies and strange similarities. (*Id.*) Magistrate Judge Lee noted that Trooper Lilly returned to his patrol car to finish writing the summonses immediately after questioning the men separately, then asked for consent to search the vehicle before issuing the documents. (*Id.*) Based on all of the circumstances surrounding the stop, Magistrate Judge Lee concluded that Trooper Lilly diligently pursued the purpose of the traffic stop, and that each step in any investigation he conducted which was unrelated to the original purposes of the stop was supported by reasonable suspicion. (*Id.*)

The United States Court of Appeals for the Sixth Circuit has stated that "the proper inquiry is whether the 'totality of the circumstances surrounding the stop' indicates that the duration of *the stop as a whole*–including any prolongation due to suspicionless unrelated questioning–was reasonable." *United States v. Everett*, 601 F.3d 484, 494 (6th Cir. 2010) (emphasis in original). Moreover, "context-framing questions will rarely suggest a lack of diligence" on the part of the officer while he or she conducts the traffic stop. *Id.* "To detain the motorist any longer than is reasonably necessary to issue the traffic citation . . . the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002).

The Court agrees with Magistrate Judge Lee that Trooper Lilly never abandoned the purpose of the traffic stop and was diligent in pursuing the purpose of the stop. Trooper Lilly began the traffic stop by telling Defendants why he had stopped them and started to go through the procedures necessary to issue the summonses. (Court Doc. 37, Transcript

("Tr.") at 24.) By the time Trooper Lilly approached Defendants' vehicle, as Magistrate Judge Lee noted, he had already observed several things that could be considered suspicious–the abrupt exit from the interstate; the choice of an exit which had no northbound reentry, although Defendants were presumably traveling to Maryland, their home state; Defendants' hesitation at the end of the exit ramp; the open sunroof on a very cold day; and the missing front license place. (*Id.* at 12-16.) As Trooper Lilly began the traffic stop, he also noticed the non-functioning window, a screwdriver by the driver's side door, and thought that the dash display was not working–all factors which led Lilly to believe that there may have been an electrical problem with the vehicle. (*Id.* at 23, 25-26.) Trooper Lilly next questioned Defendants about taking that particular exit, and their answers about needing to get gas also raised his suspicions because there were no signs on the interstate indicating that gas was readily available at that exit. (*Id.* at 26-27.) Lilly further noticed that Defendants seemed overly nervous and that Defendant Crawley, the passenger, was answering all his questions after hesitation and looks exchanged between the Defendants. (*Id.* at 27-28.)

Lilly then returned to his patrol car and ran Defendants' information through dispatch, which revealed a Georgia warrant and another charge for Defendant Crawley and a drug charge and flight charge for Defendant Allen. (Tr. at 28-31.) Trooper Lilly called for backup at this point, which he estimated was approximately ten minutes into the stop. (*Id.* at 31-33.) Lilly next questioned Defendants about their travel plans. (*Id.* at 34-35.) The Court agrees with Magistrate Judge Lee's finding that these were proper context-framing questions and did not prolong the detention for any significant length of time. The answers to those questions, however, further heightened Trooper Lilly's suspicions such

that he found it necessary to continue the investigation for reasons which were unrelated to the traffic stop. Specifically, Defendants claimed that they were on a fishing trip and heading back north to Maryland, but could not tell Trooper Lilly where they had been fishing and stated they had fished in a big lake but did not know where it was located. (*Id.* at 34-35.) Defendants stated that they had fished in Virginia, but neither Defendant had a Virginia fishing license. (*Id.* at 35-36.) In addition to these vague statements, Trooper Lilly thought it was suspicious that Defendants had been fishing at all, considering the cold weather in January. (*Id.* at 35.)

Lilly chose to separate the men for questioning and invited Defendant Crawley back to his car to discuss the summons with him while continuing to engage him in conversation about Defendants' travel plans. (*Id.* at 38-40.) Trooper Lilly then questioned Defendant Allen, and the stories he heard from each Defendant were similar but with some odd inconsistencies that further aroused Lilly's suspicions. (*Id.* at 41-42.) Both Defendants told Lilly the same basic story, but there were strange gaps in the information they provided about where they had spent various nights on their fishing trip. In particular, Defendants told Lilly they stayed with Defendant Allen's family in North Carolina the first night, but Defendant Allen could not tell Trooper Lilly the names of any of his family members. (*Id.* at 40, 42.) Neither Defendant could tell Lilly where they stayed the second night. (*Id.* at 41, 43.) Defendants both stated they had partied with girls the third night, but named different hotels. (*Id.*) When Lilly tried to get more information on the places they had fished, Defendant Crawley told him that whenever they saw a stream while driving, they would stop to fish. (*Id.* at 40-41.)

Because these stories further aroused Trooper Lilly's suspicions, when he returned to Defendant Crawley and gave him back his driver's license and registration, he also asked for consent to search Defendants' vehicle. (*Id.* at 45-46.) Defendant Crawley gave Lilly consent to search the inside of the vehicle. (*Id.* at 46.) Trooper Lilly then asked Defendant Allen to step out of the vehicle to receive his summons and told Defendant Allen that Defendant Crawley had consented to the search. (*Id.* at 47-48.) Lilly estimated that 30 minutes had passed from the time of the stop until Defendant Crawley gave consent to search the inside of the vehicle. (*Id.* at 67.) Lilly estimated that five minutes passed from the time that Trooper Lilly and Trooper Edwards began searching the vehicle and Edwards found the marijuana cigarette which gave the officers probable cause to search the entire vehicle. (*Id.*)

Although Defendants assert that certain factors relied on by Trooper Lilly later turned out to be innocent, the Court finds that Lilly had reasonable suspicion to prolong the detention beyond the purpose of the stop because of several factors. The Court acknowledges that the open sunroof, while initially suspicious, may have seemed more innocent when Trooper Lilly learned that the driver's side window was not working; the car may not have been having electrical problems after all; that Defendants' nervousness alone would not be enough, and that Defendants claim that their stories were not in fact inconsistent but instead were very similar. Nonetheless, the Court finds that Trooper Lilly had noticed a few suspicious factors before he stopped the vehicle, notwithstanding the open sunroof; that he became more suspicious because of the screwdriver, his view of the dash display that appeared to not be working, and by Defendants' claim that they were stopping for gas on an exit without readily available gas and with no northbound reentry;

that he learned that both Defendants had been charged with at least one offense each; and that further inquiry into Defendants' travel plans and the resulting story, with some implausible aspects and significant gaps, constituted many factors upon which Trooper Lilly might have based a reasonable suspicion that Defendants were engaged in criminal activity. After fully reviewing all the circumstances of the stop, the Court agrees with Magistrate Judge Lee's finding that Trooper Lilly had reasonable suspicion to support any investigation and subsequent detention which was not related to the purpose of the stop.

Accordingly, the Court agrees with Magistrate Judge Lee's findings and conclusions in regard to the length of the detention and **OVERRULES** Defendants' Objection as to this issue. Because the Court has overruled all objections and accepted Magistrate Judge Lee's recommendations, the Court **DENIES** Defendant Crawley's Motion to Suppress and Defendant Allen's Motion to Suppress.

## IV.  CONCLUSION

For the reasons stated herein, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's R&R [Court Doc. 42]. Defendant Crawley and Defendant Allen's Joint Objections [Court Doc. 45] are **OVERRULED**. Defendant Crawley's Motion to Suppress [Court Doc. 21] and Defendant Allen's Motion to Suppress [Court Doc. 27] are **DENIED**.

**SO ORDERED** this 21st day of December, 2010.

/s/Harry S. Mattice, Jr.
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE